ROSE MARY MARCUS Good morning, Your Honors. May it please the Court, Counsel. My name is Rose Mary Marcus and I represent the Juvenile Male in this matter, who with the Court's permission I'd like to refer to as Carlos. And I would also reserve 2 minutes for rebuttal. Your Honors, I first represented Carlos, was appointed to represent Carlos in 1998 when he was only 13 years old. At that time, he came into the abuse of his 6-year-old brother. He himself had suffered extensive sexual abuse and had many issues of which the government, the Court, and myself were all aware of. After about 3 months of plea negotiations, we all agreed to enter into a plea agreement with a condition and with a stipulated sentence, actually, that was a plea agreement. So, I would like to ask you, Ms. Marcus, your brief is sort of sprinkled with those observations, but this is not an appeal that has anything to do with a plea agreement. So there was no effort to withdraw it. There was no denial of an effort to withdraw it or whatever. So at this point, the only thing that seems to me to make any difference is what the district court's order was. Correct, Your Honor. But I think I bring it up for the Court's so the Court can notice that at that time, the district court's order was that he be sentenced to a facility such as our home or similar situated facility. But not limited to. I mean, the order is very clear as to what it says. Correct. And the order does say our home or similar situated facility. And our point is that, I mean, the order says to or including, something like that. And I understand, and the district court also felt that the facility such as the Santa Fe facility could be a type of treatment center. Right. It is our position that when Carlos was transferred from our home to the Santa Fe facility, then he was no longer under a CC, community corrections confinement. Was he no longer within the terms of the order? I agree with Judge Reimer. I think the terms of the order are important. And as I understand it, it says the juvenile shall participate in a sex offender treatment program specifically designed for the treatment of adolescents and offenders as directed by the probation office to include, but not limited to, our home, Inc. and complete the same. Our home asked that he be transferred. So he's not going to stay there. What is it about the Santa Fe facility that doesn't qualify as a sex offender treatment program specifically designated for the treatment of adolescents? Well, Your Honor, I think it does. It does qualify. Doesn't that mean that it complies with the order and qualifies as part of his probation? It does. But I don't think it qualifies as part of his probation. And I think what I'm saying is that the order in this case makes the sentence illegal. Not so much the order, but when they started interpreting, when the court started interpreting the order, and when probation removed Carlos from a facility that is a community confinement center and then puts him in a maximum security prison, then that makes the ---- Well, you use colored words. The point is he was out of our home regardless. So the question to the district court is what other transfer would be appropriate? He could have been ---- Well, the district court is in the supervision of probation office. That's ---- And the Supreme Court and the Bureau of Prisons and the district court in this case found that it was an appropriate treatment program. And the security level is, in effect, a nevermind. Well, it ---- and that's entirely our point. And I think that's what the government is saying, that he's still under probation supervision. He is. But technically he's under the supervision of probation. But if you look at what actually happened in this case, he was removed, put in a facility where he's incarcerated. And as ---- Well, it may not have been the facility that you contemplated negotiating the plea agreement, but you've just acknowledged it's not a facility that's inconsistent with what the plea agreement actually says. Well, I'm saying that with what the order was, that the judge ---- that the ---- the judge ordered that he be sentenced to a treatment facility. I'm saying he could have ---- yes, he was receiving ---- A sex-offendant treatment program specifically designated for the treatment of adolescents. Well, this was a program. It doesn't speak to the facility. It was for adolescents, because that's all that was held in the facility. I understand that. But encompassing the treatment, there are other things that occurred. He was sentenced in a maximum security facility. So this takes the case out of the probation. Even though he's technically under probation, under the probation jurisdiction, he's now incarcerated. Yes. That argument is uphill work for you. Could you focus on the difference between the sentence he received of 60 months and the possibility of the sentence as to 10 months, and the argument that perhaps the 60-month sentence is too long because it was not imposed for rehabilitative purposes? Yes, Your Honor. In this case, he was sentenced to a term of 60 months, as the Court has stated, there was ---- which was the maximum term that he could ---- that he was before the Court for the revocation on this case. The 60 months, it's our position that the 60 months was excessive, because he was not ---- right now, for example, he's sentenced to 60 months where he's not receiving sexual abuse treatment. Again, the 60 months was more of a punishment, and there was nothing in those 60 months that would indicate that he should have received ---- that he should be receiving sex abuse treatment. The 60 months in this case, they didn't focus on the rehabilitative state. They didn't focus on the guidelines and or the advisory notes of the guidelines of Chapter 7. The district court considered the policy statement, and the district court considered the guidelines, and the district court said, look, he offended within 24 hours, of being released into a community treatment center, and he obviously can't be released to the public, and he needs to have six months in ---- excuse me, five years, 60 months to get over it. I mean, what more could ---- what other bases do you say the district court should have touched? I think the district court should have touched on the fact that if Carlos were an adult, they would have considered at least the guideline range in this case. But he did. The district court did consider the guideline range. Didn't he? I mean, he didn't buy it, but he considered it. Your Honor, I also would like, with regards to sentencing, would like to point out that if Carlos had been ---- had had a hearing when he was transferred from one facility to the other, he would have been looking at the maximum they could have sentenced him to would have been 43 months. And not only that, he ended up serving 30 months. Could I interrupt that argument, because time is running? What obligation and what's the form of the obligation that the district judge had in considering rehabilitative purposes? Where does that obligation come from and what does it look like? I'm sorry. I'm back on this question of 60 months versus 10 months. What obligation does the district judge have in considering that sentence to consider rehabilitation during the time he serves that sentence, and where does that obligation come from? Well, it comes from Section 3553A, which gives him the purposes of sentencing and tells the judge, you know, the different. One is rehabilitation. The other is the ability to ---- and I'm sorry, my time is up. But the other one is the ability to re-submitivism, things to that effect. And that's where that comes from, that he has to look at the point of rehabilitation as well. Thank you. Thank you, Ms. Marquez. Ferg. May it please the Court, my name is Bruce Ferg, assistant United States attorney on behalf of the government. I believe that the Court has already fixed on the crucial issue here, and that is the terms of the original order. And precisely what was contemplated in that, I would direct the Court's attention or actually it sounds like Judge Clifton was reading from it. The original order which effectuated the agreement was not to a particular facility, but to a treatment program like our home at the direction of the probation officer. So it was very clear from the order as it was directed, both orally and in writing, that our home was not the exclusive choice or the exclusive possibility, but rather is simply a treatment program of like nature. And that is exactly what happened. He, the defendant, went to our home and spent 17 months there. And the letter which was included in the record from the facility director indicates that they were bending over backwards to try and work with this young man because they recognized that he had severe problems. And so they didn't anticipate that it was going to be a quick process. But nonetheless, by the end of 17 months, it was clear to the staff there that he not only was not making any progress, he wasn't interested in making any progress. He basically enjoyed his condition. And the letter also indicates that he had specifically vocalized intents to perpetrate again, given the opportunity. So really, what was the choice? There had to be done something. He was not making any progress there. The record is clear, and there was specific testimony even from Ms. Baca, the director of the Santa Fe facility, who seemed to be more concerned about the security issues and overall management. But she herself agreed that this was, in fact, a program which was specifically designated for juvenile sex offenders. And so it clearly meets the intent of the order of probation that was initially established. Mr. Getridis, I believe it was, the probation officer, indicated that there are fairly limited options available when you're talking about sex offender programs for juveniles. And particularly because probation itself did not have funding. The only way that they could put him anywhere was if it was a program that was ended up funded by the BOP, which is what Santa Fe as well as our home were. I think you're pushing on an open door on all the points you've just made. The one point of concern to me is the 60-month sentence, as distinct from the possibility of a 10-month sentence. Could you help me on that point? Very clearly, at the time of the disposition hearing, after the real revocation of probation, after the re-offense in the Tucson halfway house, the district courts said, I'm looking at everything. It had been argued to them and had been discussed in the disposition report. You have this range. On the one hand, there is the range that would apply to an adult offender. On the other hand, there is the advisory range, and I believe it's Chapter 7 of the guidelines. And you can look at both of these. And he said, I have looked at everything. But he was very concerned that basically everything that could be done through a straight probation had already been done. And the young man was still immediately re-offending as soon as he had opportunity to do that. So effectively, the court said, what can I do not only that will help him but will protect society? It's simply a period of, in fact, imprisonment. Now, it's important to note that the court recommended that to the extent that it was available through BOP, he would still be given rehabilitative treatment. And do we know what's happened with respect to that recommendation? No, sir, I don't know that. Is there some way for you to determine that? Their Web site tells us what facility he is at. No, that's not quite my question. No, is there some way for you to determine that specifically with respect to Carlos? I don't know. I can certainly attempt to do that and provide. That's not part of this record, is it? No, it's not. No, it's not. That's outside the record and I think irrelevant to the decision that I made. But ultimately, your question is about the reasonableness of what the district court did. And given the circumstances here, the long history of efforts already to assist Carlos in getting over his problem, which were not succeeding in the situation that he had and the end of the probation, because of the timing of this, I understand that juvenile supervised release was not an available option. So there really was no meaningful choice except to imprison him for his own best interests, as well as for the community's to get whatever treatment might still be available through BOP applied to him. But at the very least, to keep him from abusing others and putting him himself potentially in danger. Someone responded to that. If the Court has any other questions. Okay. Thank you. Thank you. Judge, I do know that Carlos is sentenced right now serving his time at a Stafford facility in FCI in southern Arizona where it's a medium to lower security level facility. And he can work and get whatever is available to him, but I'm not sure that specific adolescent sex abuse treatment is available at that facility. And with regard, Your Honor, to your question about the 60 months, and my response was that Section 3553A would be the avenue by which the Court should have considered rehabilitation as a form of punishment. 3582, which discusses the imposition of sentencing of imprisonment, specifically states that a court should sentence pursuant to 3553A to the extent where applicable. And then it says, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation. And in this case, we do feel that the 60 months was excessive in the sense that if we are looking at the goal, which has been the goal this entire time according to the district court, which was to rehabilitate Carlos, then the 60 months would be excessive. The other brief thing I wanted to touch up on. I'm sorry. My time is up. The time has expired. Thank you, Counsel. The matter just argued will be submitted.
judges: Rymer, W. Fletcher, Clifton